IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LUKE KIRK,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

No. 3:18-cv-00223-HZ

OPINION & ORDER

Judy Danielle Snyder
Holly Lloyd
Law Offices of Judy Snyder
1000 SW Broadway, Suite 2400
Portland, OR 97205

    Attorneys for Plaintiff

Billy J. Williams
United States Attorney
Dianne Schweiner
Assistant United States Attorney
District of Oregon
1000 SW Third Ave, Suite 600
Portland, OR 97204

    Attorneys for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Luke Kirk brings this action under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), alleging that Defendant United States of America is vicariously liable for the professional negligence of Ami Phillips, a former employee of the Portland Veterans Affairs Medical Center.[1]

Before the Court is Defendant's motion for summary judgment. Defendant argues that it is not vicariously liable for Phillips' actions because Phillips' tortious conduct did not occur within the scope of her employment. For the reasons that follow, the Court finds that Phillips was not acting within the scope of her employment and therefore GRANTS Defendant's motion.

## BACKGROUND

Plaintiff is a 100% service-connected disabled veteran. Kirk Decl. ¶¶ 2, 3, ECF 20. In November 2015, Plaintiff began receiving mental health treatment at the Portland Veterans Affairs Medical Center (VAMC). *Id.* at ¶¶ 4, 5. As part of that treatment, the VAMC assigned Ami Phillips, a licensed social worker, to hold weekly therapy sessions with Plaintiff. Morgan Decl. Ex. C at 1, ECF 15. In December 2015, those weekly sessions became twice-weekly sessions. Kirk Decl. ¶ 5.

Eventually, Phillips and Plaintiff began a personal, romantic relationship. Phillips provided Plaintiff with her personal cell phone number, and the two began exchanging text messages. Morgan Decl. Ex. A at 1. In these text messages—sent throughout the work-day and at night—the pair discussed personal matters like falling in love, getting married, and adopting a child. *See* Morgan Decl. Ex. E, ECF 15-5. They also discussed matters related to Plaintiff's

---

[1] The Portland Veterans Affairs Medical Center is part of the United States Department of Veterans Affairs, a department of the federal government.

ongoing therapy sessions. Some of these matters were routine, like scheduling appointments and meeting with a new psychiatrist. *See id.* at 33, 35. Others involved more substantive, therapy-related conversations. For example, in one message, Phillips commented on a previous session, stating "[i]t was nice seeing you today and hear you repeat some of the things we worked on. So our last therapy sessions were not a complete failure." *Id.* at 90. In another, Phillips appeared to provide Plaintiff with therapeutic advice: "You allow your [self] to be small because that's how your parents treated you[.]" *Id.* at 76. Plaintiff once wrote that "The only reason you would choose me to be a part of your life is to better understand my illness and behaviors." *Id.* at 68. And Phillips once threatened to cancel their therapy appointments and terminate Plaintiff from the clinic if Plaintiff did not apologize following a personal fight. *See id.* at 82–84.

At one point, Plaintiff expressed to Phillips, via text, that he was feeling suicidal. *Id.* at 113–24. Phillips directed him to report to the VAMC emergency room. *Id.* at 113. She arranged, in her official capacity, for Plaintiff to be admitted for treatment. *Id.* at 114–16. She told him if he didn't come to the hospital, she would have to contact the police. *Id.* at 116. While Plaintiff initially headed to the VAMC, where he was told that Phillips would wait for him and facilitate his entry and treatment, he eventually decided to return home rather than seek admittance. *Id.* That evening, Phillips appears to have spent several hours at Plaintiff's apartment. *Id.* at 120–24.

The relationship was not limited to texting. Phillips spent time at Plaintiff's apartment, and the pair went to bars and restaurants. *See, e.g.*, Kirk Decl. ¶ 9. They also maintained their weekly (or twice-weekly) therapy sessions at the VAMC. At one session, Phillips and Plaintiff kissed. *Id.* at ¶ 11. At another, Phillips "sat on a counter, and put her legs on" Plaintiff. *Id.* at ¶ 8. Plaintiff describes one session where Phillips "told [him] to put [his] hands on her hips, and said it would help [him] with [his] personal interactions with others . . . . [He] believe she just wanted

to touch [him] and have [him] touch her." *Id.* Even when there was no physical contact, the sessions sometimes involved discussions about their romantic lives and their personal relationship. *Id.* ¶ 7, 8.

In June 2016, the personal relationship between Plaintiff and Phillips deteriorated. Plaintiff told Philips he was going to report the relationship to the VAMC. *Id.* at ¶ 11. He followed through on June 8, 2016. Morgan Decl. ¶ 2. That same day, Phillips falsely reported to the VAMC that Plaintiff had threatened to kill her. *Id.*; Morgan Decl. Ex. A at 3. In response to this report, the mental health clinic closed for the day. Morgan Decl. Ex. A at 3. However, once an investigation revealed that Phillips' allegations were false, Phillips was fired and criminal charges were filed. Morgan Decl. Exs. H, I. Phillips eventually pled guilty to attempted coercion and initiating a false police report. Morgan Decl. Ex. J. Plaintiff filed this complaint on February 1, 2018. ECF 1.[2]

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017) (quoting *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015)).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet this initial burden, a

---

[2] Plaintiff objects to Defendant's exhibits B and D as inadmissible hearsay. The Court did not consider exhibits B and D in resolving this motion and therefore declines to rule on the issue.

moving party without the burden of proof at trial need only point to the absence of evidence supporting the nonmoving party's claim. *Id.* at 325.

Once that initial burden is satisfied, the burden then shifts to the nonmoving party to demonstrate that there remains a genuine issue of material fact to be tried. *Id.* at 323. A nonmoving party with the burden of proof at trial must move beyond mere allegations and set forth affidavits, declarations, motions, or other evidentiary materials from the record to establish the essential elements of its claim. *Id.* at 324.

All reasonable doubts as to the existence of a genuine issue of material fact must be resolved in the nonmoving party's favor. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[I]f conflicting inferences may be drawn from the facts . . . the case must go to the jury." *Reed*, 863 F.3d at 1204 (quoting *LaLonde v. Cty. Of Riverside*, 204 F.3d 947, 99599 (9th Cir. 2000).

## DISCUSSION

Defendant raises a single issue in this motion for summary judgment. Defendant argues it is not vicariously liable for Phillips' negligent conduct because Phillips was acting outside the scope of her employment when she engaged in a personal relationship with Plaintiff.

"A party may bring an action against the United States only to the extent that the government waives its sovereign immunity." *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995). The government has waived its sovereign immunity under the Federal Tort Claims Act (FTCA) for claims "arising out of the negligent conduct of government employees acting within the scope of their employment." *Soldano v. United States*, 453 F.3d 1140, 1145 (9th Cir. 2016). Whether an employee was acting within the scope of her employment is decided using the

law of the state in which the alleged tort occurred. 28 U.S.C. § 1346 (b)(1); *Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 876 (9th Cir. 1992).

Here, the alleged tort occurred in the state of Oregon. Under Oregon law, an employee's act falls within the scope of her employment when (1) "the act occur[s] substantially within the time and space limits authorized by the employment;" (2) "the employee [is] motivated, at least partially, by a purpose to serve the employer;" and (3) "the act is of a kind which the employee was hired to perform." *Chesterman v. Barmon*, 305 Or. 439, 442, 753 P.2d 404 (1988). Each element must be met to hold an employer vicariously liable. *Fearing v. Bucher*, 328 Or. 367, 373, 977 P.2d 1163 (1999). While the question of whether a particular act falls within the scope of employment is generally left for the trier of fact, "summary judgment is appropriate when only one reasonable conclusion can be drawn from the facts." *Brungardt v. Barton*, 69 Or.App. 440, 443, 685 P.2d 1021 (1984).

Plaintiff urges the Court to follow *Fearing v. Bucher*, 328 Or. 367, 373, 977 P.2d 1163 (1999) in its analysis of this issue. In *Fearing*, the plaintiff brought claims of sexual abuse against a priest and his employer. 328 Or. at 370. In determining whether the priest's employer was vicariously liable for the priest's actions, the Oregon Supreme Court applied the *Chesterman* factors. The court found that the priest's "alleged sexual assaults on plaintiff clearly were outside the scope of his employment" under the traditional test, but held that the "inquiry does not end there." *Id.* at 374. Instead, the court went on to ask whether "acts that *were* within [the priest's] scope of employment resulted in the acts which led to injury to [the] plaintiff." *Id.* (emphasis added; internal quotation marks and citation omitted). The court concluded that because a jury could infer from the facts alleged that "performance of . . . pastoral duties with respect to plaintiff and his family were a necessary precursor to the sexual abuse and that the assaults thus

were a direct outgrowth of and were engendered by conduct that was within the scope of . . . employment," *id.* at 377, the plaintiff had met "all three . . . requirements for establishing that employee conduct was within the scope of employment," *id.* at 375; *see also Barrington v. Sandberg*, 164 Or. App. 292, 295, 991 P.2d 1071 (1999) ("The essential point is that the performance of the employee's duties must be a necessary precursor to the misconduct and that the misconduct must be a direct outgrowth of, and have been engendered by, conduct that was within the scope of the employee's employment. It is not necessary that the misconduct itself be of a kind that the employer hired the employee to perform.").

However, the Ninth Circuit has made clear that, according to the Oregon Supreme Court, *Fearing* created an *alternative* test with respect to the second and third *Chesterman* factors, and that test is only applicable where intentional torts are alleged. *Doe v. Holy See*, 557 F.3d 1066, 1082–83 (9th Cir. 2009) (citing *Minnis v. Oregon Mut. Ins. Co.*, 334 Or. 191, 48 P.3d 137 (2002)). Here, Plaintiff alleged Phillips' professional negligence. Thus, the alternative *Fearing* test—which allows a court to ask whether duties within the scope of employment were a necessary precursor to the allegedly tortious acts—is not applicable. The Court is therefore bound to the traditional test.

Under the traditional test, the Court finds there is a question of fact as to (1) whether Phillips' conduct occurred in the time and space limits authorized by the employment and (2) whether Phillips was motived in part to serve her employer. However, Plaintiff has not shown that Phillips' conduct was of a kind that she was hired to perform.

### A. Whether Act Occurred Substantially Within the Time and Space Limits Authorized by the Employment

There is a question of fact as to whether the personal relationship developed within the time and space limits authorized by Phillips' employment. Plaintiff and Phillips met through the

VAMC. Phillips was assigned by the VAMC to conduct weekly therapy sessions with Plaintiff. Over the course of their personal relationship, Plaintiff and Phillips continued to meet, on a weekly basis, at the VAMC, for those therapy sessions. Phillips admits to having physical contact with Plaintiff at the VAMC, *during* therapy sessions. This physical conduct included one instance of kissing, and other instances of touching. Even when there was no physical contact, the two sometimes discussed their personal relationship during these sessions. After the relationship ended, Phillips falsely reported to the VAMC and her supervisor that Plaintiff had threatened to kill her, which prompted the mental health clinic at the VAMC to close for the remainder of the day.

Phillips and Plaintiff also communicated via text message during the work day, when Phillips was presumably working. Those texts included conversations about Plaintiff's treatment at the VAMC and on-going therapy sessions. They highlight the connection between the personal and professional relationship. For example, Phillips once threatened to cancel their therapy appointments and terminate Plaintiff from the clinic if Plaintiff did not apologize following a fight.

While much of the personal relationship appears to have occurred outside of the workplace—at Plaintiff's apartment, for example—not *all* the conduct occurred outside of the workplace. Because many of the contacts occurred during work hours, on the VAMC campus, and even in therapy sessions themselves, a jury could reasonably conclude that the tortious conduct at issue occurred substantially within the time and space limits authorized by the employer.[3]

---

[3] Defendant's reliance on whether the conduct *itself* was authorized is misplaced. The requirement considers the authorized time and space limits of the employment—not whether the conduct was authorized.

B.  **Whether Employee was Motivated, at Least Partially, by a Purpose to Serve the Employer**

There is a question of fact as to whether Phillips was motivated, at least partially, by a purpose to serve her employer. Defendant argues that Phillips was motivated solely by her own interests and not by any purpose to serve the VAMC.  Defendant argues that Phillips knew the relationship was prohibited, took actions to keep the relationship secret, and urges the Court to rely on *Thomas v. Dyer*, 151 Or. App. 546, 950 P.2d 390 (1997).

In *Thomas*, the Oregon Court of Appeals concluded that defendant Dyer, a mental health counselor, was not motivated to serve his employer, Legacy Mt. Hood Medical Center and Legacy Adventist Venture (Mt. Hood), when he initiated a sexual relationship with plaintiff, a former patient at the Mt. Hood facility. 151 Or. App. at 548, 556. Rather, the court found that the "uncontroverted evidence" showed that Dyer "was undertaking a social relationship for his own benefit." *Id.* at 554. In reaching this conclusion, the court reasoned that

> [a]fter plaintiff began her relationship with Dyer, she did not return to the facility where Dyer worked. None of Dyer's inappropriate conduct occurred in the workplace. Moreover, Mt. Hood's treatment plan for plaintiff did not contemplate social contacts with Dyer, nor is there any evidence that it included counseling of plaintiff by Dyer as a "private counselor." In fact, Dyer failed to inform his employer of the relationship with plaintiff. It is a mere fortuity that Dyer may have rendered counseling to plaintiff during the course of their social relationship. Thus, plaintiff has failed to present any evidence that Dyer, during the period in question, was motivated to serve Mt. Hood[.]

*Id.* at 554–55.

While there are superficial parallels between *Thomas* and the case at hand—including that Dyer and Phillips were both mental health professionals, and the parties met at a mental health facility—the Court finds that *Thomas* actually counsels the opposite conclusion in this

9 – OPINION & ORDER

case.[4] Unlike the defendant in *Thomas*, who had no sanctioned therapy relationship with the plaintiff, Phillips was assigned *by* the VAMC to hold weekly—and then twice weekly—therapy sessions with Plaintiff *at* the VAMC. These sessions continued through the duration of the personal relationship, and the facts suggest that Philips used these sessions to both counsel Plaintiff in an official capacity *and* to pursue a personal relationship. For example, Plaintiff describes one instance where Phillips told him to put his hands on her hips during a session because it would help him in his "personal interactions" with others.

This same mix of the personal and professional appears to have continued outside of work: evidence suggests that Phillips and Plaintiff discussed their authorized sessions and the therapeutic relationship via text message. For example, the two scheduled appointments and discussed changes to Plaintiff's treating team via text. Significantly, the Court notes one exchange where Plaintiff, in crisis, texted Phillips that he was contemplating suicide. Phillips directed Plaintiff to report to the emergency room, "pulled strings" to have him admitted, stayed at work to facilitate his entry, and told him that if he didn't show up, she would have to contact the police. Instead of calling the police, however, it appears that she went alone to his apartment. A jury could infer that Plaintiff was reaching out to his therapist for help. And Phillips, at least initially, took the very actions one might expect a therapist, in her official capacity, to take.

In sum, the lines between the personal relationship and the authorized therapeutic relationship are hazy at best. A jury could infer that, throughout the relationship, Phillips was motivated, at least in part, by a purpose to serve the VAMC. At the very least, in cultivating a

---

[4] While Defendant is correct that Mt. Hood *argued* that Dyer's "conscious effort to keep the relationship secret and the acknowledgment [that he] would lose his job for such behavior definitively establishes both parties knew [he] acted out of personal motives, and not to carry out any employment responsibilities," the court did not rely on, adopt, or even discuss this reasoning. *See* 51 Or. App. at 552, 554.

relationship with Plaintiff, Phillips was, at least initially, motivated by a desire to fulfill her duties as a therapist and a jury could infer that over time, her motives became mixed.

### C. Whether Act was of a Kind which the Employee was Hired to Perform

Phillips was not hired to engage in a personal, romantic relationship with a patient. Plaintiff argues only that, under the *Fearing* test, Phillips' tortious conduct resulted from acts that she was hired to perform. In other words, Phillips was hired to perform the very acts that were a necessary precursor to the misconduct at issue, and the misconduct was the direct outgrowth of, and engendered by, conduct that was within the scope her performance as an employee. *See Fearing*, 328 Or. at 377 (finding that "[a] jury reasonably could infer that Bucher's performance of his pastoral duties with respect to plaintiff and his family were a necessary precursor to the sexual abuse and that the assaults thus were a direct outgrowth of and were engendered by conduct that was within the scope of Bucher's employment."). However, as explained above, Plaintiff cannot rely on *Fearing*, as he has alleged only negligence under the FTCA.

Without *Fearing*, Plaintiff cannot show that the negligent acts were "of a kind" that Phillips was hired to perform. While Phillips was assigned to—and did, at some point—provide counseling services to Plaintiff, the conduct at issue went far beyond what was authorized. Phillips spent time outside of work with Plaintiff. She discussed her desire to move in with Plaintiff, raise a child together, and get married. Not only were these acts unrelated to the work she was hired to perform, but they directly violated the Social Worker Code of Ethics, resulted in her termination, and led to criminal charges. In sum, Phillips pursued a "personal, secret, and sexual relationship," that completely surpassed the therapy she was hired to perform.

Because Plaintiff cannot show, without the *Fearing* test, that Phillips' tortious conduct was "of a kind" that she was hired to perform, Plaintiff cannot hold Defendant vicariously liable for Phillips' actions. The Court therefore grants Defendant's motion for summary judgment.

## CONCLUSION

Defendant's motion for summary judgment [14] is granted.

IT IS SO ORDERED.

Dated this 29 day of May 2019.

/s/ Marco Hernandez
MARCO A. HERNANDEZ
United States District Judge